UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 13 CR 148 (PKC)

KENNETH HOYT,

VOSR

Defendant.

------------------------------x

New York, N.Y.
June 7, 2023
12:00 p.m.

Before:

HON. P. KEVIN CASTEL,

District Judge

APPEARANCES

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
NEGAR TEKEEI
Assistant United States Attorney

FREEMAN NOOTER & GINSBERG
Attorneys for Defendant
BY: LOUIS M. FREEMAN

Also Present:

FRANKLIN CARVAJAL, Probation

(Case called)

MS. TEKEEI: Good afternoon, your Honor. Negar Tekeei on behalf of the United States, and joining me at counsel's table is Probation Officer Franklin Carvajal.

THE COURT: Good to see you, Ms. Tekeei.

MS. TEKEEI: Thank you, your Honor.

THE COURT: And welcome, Mr. Caravajal.

And for the defendant?

MR. FREEMAN: Good morning or good afternoon; it should be somewhere on the cusp. This is Louis Freeman, and I represent Mr. Hoyt.

THE COURT: Good to see you, Mr. Freeman.

Now, Mr. Hoyt has been arraigned, my recollection is, on the violation circumstances relating to the alleged incident on January 10, where he allegedly exposed himself to a female on the streets of New York.

Let me hear from the government. What has taken place? Where do we stand? And what are the next steps?

MS. TEKEEI: Thank you, your Honor.

I'm happy to provide the Court with an overview, and I'm certain Mr. Freeman will correct me if anything that I convey is off, as will Mr. Caravajal.

When we last appeared before your Honor, it was our understanding — and I should say it remains our understanding — that the state intended to charge Mr. Hoyt, to bring formal

charges, for, among other things, stalking, harassment, aggravated harassment, and public lewdness, some of which is reflected in the violation specification that brought us here to begin with.

We have been in touch with the ADA and also the case detective. It is still their intention to bring those charges. They have not yet brought those charges.

Among the reasons they provided was, they were ready to but there was an issue with an ADA's databases or systems in their offices the day that they were prepared to proceed with the case. They could not something about their systems went down and they did not, and then they did not reschedule. I'm conveying to the Court what was reported to us.

So we spoke with the ADA as recently, again, as this morning, and she conveyed that she does intend to proceed with charms, that she's in consultation with her supervisors about the scope of the charges and the nature of the charges.

We conveyed to her that, as it stands right now, we have a pending violation proceeding before your Honor, and it is our understanding that Mr. Hoyt denies the allegation, which is of course his right, and that he would like to proceed to a hearing on that specification, again, of course his right.

So we conveyed that what we are conveying to the Court now, which is that they are certainly welcome to proceed with their charges, but if Mr. Hoyt wants to proceed with a hearing,

which is, again, of course his right, we will be gathering the evidence, meeting with the witness, meeting with the detective, and preparing for a hearing on the current specification, as well as potentially adding, as I understand from Mr. Caravajal, additional violations in advance of such a hearing, that would encompass, it sounds like, largely the same course of conduct. It may not require much additional proof, but that's where we stand.

And, therefore, the federal proceedings may then go ahead of the state proceedings, depending on the status of her case and whether she intends -- how she intends to proceed. It's not so much a whether but what the form of those charges would be.

She conveyed that she understands that, that if a hearing date is set, that would inform the timeline by which they may bring charges. We conveyed -- or when they will bring charges and we conveyed that notwithstanding the state charges, the Court may wish to proceed on a hearing one way or the other. It's entirely up to the Court and we will be prepared for a hearing, which will include much of the evidence in their case.

THE COURT: Now, refresh my recollection. Actually, I'll refresh my own.

MS. TEKEEI: Sure.

THE COURT: It looks like the charge is that the

defendant committed a state crime, assault in the third degree, on January 10, 2023.

Is that the violation circumstance, the one violation circumstance, charged here?

MS. TEKEEI: Yes, your Honor. That's the current violation circumstance, the facts of which are set forth in the report. However, we understand, from debriefs of the victim, that, in fact, Mr. Hoyt allegedly engaged in a course of conduct that involved harassing the victim over a longer period of time, including by personally appearing, physically stalking, and also sending multiple messages to the victim. Once we meet with the victim ourselves, in preparation for a potential hearing, there is a chance that additional violations may be included, but we had held off on doing that given the parallel state proceeding, until this moment.

THE COURT: This is not the first violation circumstance that has been adjudicated before me; is that correct?

MS. TEKEEI: That's correct, your Honor. Mr. Hoyt's terms of supervised release have been revoked three times prior, including for acts of public lewdness and public exposure.

THE COURT: Three separate occasions?

MS. TEKEEI: Yes, your Honor.

THE COURT: So I guess, for the sake of good order,

the question is when this should be set down for an evidentiary hearing.

What does propose for that?

MS. TEKEEI: Sure, your Honor.

Having spoken with Mr. Freeman and thought about the preparation time and our calendars and not yet having had a chance to consult with the Court's calendar which of course we will do as the Court requests, the parties have looked at the second and third weeks of July as available dates, trying to avoid the holiday period.

THE COURT: All right.

I have a jury trial the month of July, et cetera. But would it be convenient to do this on July 25th at 11:30 a.m.?

MS. TEKEEI: Can you please give us one moment, your Honor?

THE COURT: Sure. And the same question for Mr. Freeman, of course. And I want to hear from Mr. Freeman if he has some different viewpoint on whether the next step is to schedule the evidentiary hearing.

MS. TEKEEI: Your Honor, July 25th at 11:00 a.m. works for --

THE COURT: 11:30 we have a VOSR on at 11:00 and this will follow that VOSR although this will be an evidentiary and I realize it may continue on CKfigs through the afternoon.

MS. TEKEEI: Thank you, your Honor. That time works

for the government and also for Mr. Caravajal.

THE COURT: All right.

So, Mr. Freeman, what do you think?

MR. FREEMAN: Well, first of all, the date and time that you chose is acceptable to the defense, and I appreciate it, for all concerned.

However, Judge, first of all, I'd like to make sure that you understand — and I think you do — that the assault in question was an exposure, not a hands-on assault. When I first read it, I thought assault would mean a physical assault, but it is just as difficult for the victim if indeed it occurred but I want to make sure you understand it's an assault of the exposing variety.

Next I'd like to discuss that the government here, essentially on behalf of the district attorney's office in Manhattan, had asked for this date they had already asked for 30 days, and now they're asking again for 30 days. And I don't think we've gotten anywhere since the last time we were together. And I think that that is sufficient basis for me to ask for my client's release.

As you will recall, the district attorney's office knew about the incident, which occurred in January of 2023, I think N March, if I'm not mistaken. They knew about it in March. And one has to wonder — I won't say much more than that — one has to wonder why it took from January to March for

the NYPD to know about this incident. But from --

THE COURT: That's not chargeable to the Manhattan DA's office, right?

MR. FREEMAN: Well --

THE COURT: Or to NYPD.

MR. FREEMAN: You're right, you're right.

So anyway, it's taken a while. My client has been in custody for months now. And we would ask --

THE COURT: I assume he hasn't been in custody since January.

MR. FREEMAN: No.

THE COURT: He's been in custody since some date when?

MR. FREEMAN: I think it was April.

THE COURT: Okay.

MR. FREEMAN: April 21.

THE COURT: Okay.

MR. FREEMAN: Anyway, that's my first point.

As far as the date is concerned, the U.S. Attorney's Office does have to begin to prepare for an evidentiary hearing, they have to provide discovery to me, and I think that that date is a reasonable date, the July 25th, and I think that gives everybody a chance, including myself and my client, a chance to prepare.

THE COURT: Okay. Wonderful.

And the government will make timely production, both

of what I'll call Rule 16 type material.

When do you propose to produce 3500 material?

MS. TEKEEI: Your Honor, we typically produce 3500 material in a case like this, I think approximately one week before the hearing. We will, of course --

THE COURT: That sounds reasonable.

MS. TEKEEI: Wonderful.

We would, of course, produce any potential *Brady* or *Giglio* material, depending on the volume and the nature of it, in chance of that, but that's what we would intend, is a week before the hearing.

THE COURT: Thank you.

So, Mr. Freeman, what are you asking me to do?

MR. FREEMAN: In a word, release my client pending the hearing.

THE COURT: All right.

MR. FREEMAN: I don't think the delay at the district attorney's office is a satisfactory explanation. I feel like the problem with their computer systems is, no disrespect, but it sounds a little bit like my dog ate the homework excuse.

THE COURT: All right.

Let me hear from the government.

MS. TEKEEI: Thank you, your Honor.

We think Mr. Hoyt should remain detained. We previewed for your Honor what the allegations are they come

after a history of violations by Mr. Hoyt on supervised release, a history of federal criminal activity that he was convicted for, and a history of state crimes.

So we think he poses a danger to the community. We do not have any information about an established residence, for example,, connections or ties to the district. So we also have concerns about his risk of flight. These charges are very serious. We would proceed with the current violation specification and additional violations as we develop the evidence on our own, notwithstanding the progress of the state case.

So we think he should remain detained.

THE COURT: All right.

Any reply?

MR. FREEMAN: Just briefly, to complete the record, your Honor. My client was living in a shelter. It may not be your typical primary residence, but for him, it was his home for a long period since he was released from the last violation until he was arrested.

THE COURT: All right. Thank you.

One moment, please.

(Pause)

THE COURT: This defendant has a conviction, an old one, for making harassing telephone calls in which he threatened too kill a girl. This was 1984 — child molestation

at age 21; in 1985 indecent exposure, age 22; indecent exposure, age 25 in 1990; obscene telephone call, age 27, in 1991; indecent exposure, age 27, in 1991; contributing to the delinquency of a minor, age 27, in 1992; attempted coercion by force, age 30, 1995; loitering for the purposes of prostitution, at age 39, in 2003; failure to register as a sex offender in 2009, age 45; indecent exposure in 2010, age 45.

Then he was convicted before Judge Sweet of failing to register as a sex offender. And his violation of supervision was revoked, and he was sentenced by Judge Sweet on May 18, 2018, committing a state crime, public lewdness. And then he was found to have further violated the terms of his supervised release, by me on January 21, 2020, and again on January 8, 2021.

So that's what I have here as a record. This is not an original bail situation; this is a convicted person who was released on supervised release. And the Court finds, by clear and convincing evidence, that allowing him to remain at liberty creates a danger to members of the community other than himself, and that there is no condition or combination of conditions that can protect against it. So the bail application is denied.

And I will see you all on July 25th at 11:30 a.m.

Anything further from the government?

MS. TEKEEI: No, thank you, your Honor.

THE COURT: From the defendant?

MR. FREEMAN: Thank you. No.

THE COURT: Thank you, all, very much.

(Adjourned)